UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24574-CIV-GAYLES

FARAH IBRAHIM, et al.

    Plaintiffs/Petitioners,

Vs.

JUAN ACOSTA, Assistant Field
Office Director, Miami Field Office,
Immigration and Customs Enforcement,
Et al.

    Defendants/Respondents
_____/

DEFENDANTS' RESPONSE AND OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT OR IN THE ALTERNATIVE TO ENFORCE COURT ORDER

Defendants, by and through their undersigned counsel, file their Response and Opposition to Plaintiffs' Motion for Contempt or in the Alternative, to Enforce Court Order, and state:

    I.    DEFENDANTS HAVE COMPLIED WITH THIS COURT'S DECEMBER 19 and 20, 2017 ORDERS

On December 19, 2017, this Court entered an Order staying the removal of 92 Somalis in the custody of ICE. D.E. 14. The 92 Somalis, all with final orders of removal, were onboard a chartered flight that departed the United States on December 7, 2017, with an ultimate intended destination of Somalia. The flight encountered difficulties in Senegal due to a crew change issue, and the Somalis were returned to the United States on December 9, 2017, at Miami, Florida. Upon arrival in Miami on December 9, 2017, 40 of the Somalis were placed at the Krome Detention Center, while the remaining 52 were placed at the Glades Detention Center, Moore Haven, Florida. Exhibit A, Declaration of Juan L. Acosta, ¶ 4.

In its December 19, 2017 Order, the Court ordered defendants to provide plaintiffs "with adequate medical treatment for any injuries they have sustained." D.E. 14 at 2. Further, the Court ordered that "[d]efendants shall keep the Plaintiffs within the Southern District of Florida until further order of the Court and shall provide Plaintiffs with reasonable access to their attorneys."[1] Id.

Defendants have complied with the Court's order that it provide plaintiffs with reasonable access to their attorneys. Plaintiffs' claims of noncompliance with the Order focus on the detainees housed at Glades. D.E. 49 at 1-2.

A. Attorney Visitation at Glades

Legal representatives of detainees are authorized to visit their clients at Glades on Mondays through Sundays (including holidays), from 7:00 a.m. to 10:00 p.m. Acosta Decl., ¶ 6. Thus, every day of the week, including holidays, a legal representative may visit a client from 7:00 a.m. to 10:00 p.m., fifteen hours each day of the week.

Glades has four dedicated Attorney/Client visiting booths. Acosta Decl., ¶ 5. Photographs of the attorney/client visiting booths are attached as Exhibit B. The booths are secure, and allow for confidential communication between an attorney and his/her client. These booths permit an attorney to consult with one client, consistent with an attorney/client conference. Further, Glades also has two other meeting spaces which can be used for attorney-client conferences on an as available basis. Acosta Decl., ¶ 5.

Plaintiffs' Memorandum of Law claims that "Glades has only *one* room in which confidential attorney-client conversations can be held." D.E. 49-1 at 5 (emphasis in original).

---

[1] On December 20, 2017, the Court issued its Amended Order Staying Removal (D.E. 19), in which it amended its previous order to provide that "[d]efendants shall keep the Plaintiffs within the Southern District of Florida or their current institution of confinement until further order of the Court and shall provide Plaintiffs with reasonable access to their attorneys." D.E. 13 at 3.

2

The Declaration of Jessica Elisa Shulruff also contends that "there is only one meeting room …" D.E. 49-3 at 2, ¶ 5.  If plaintiffs are claiming there is only one room available for an attorney to meet with one client, then plaintiffs are incorrect.  The four attorney-client visitation booths may be used, in additional to the meeting room which plaintiffs refer to as the only meeting space available.  This is clearly reasonable and adequate access to attorneys for the 52 Somalis detained at Glades.

Plaintiffs' counsel appear to be suggesting that the Court's order that defendants "provide Plaintiffs with reasonable access to their attorneys," means ICE must provide sufficient space for attorneys to conduct group legal presentations, in a manner this is most optimal for the attorney's needs.  Plaintiffs are incorrect because reasonable access has been provided to plaintiffs to meet with their attorneys, in four attorney-client visitation booths, where confidential communications can be had between an attorney and his/her client.

A group legal presentation is not an attorney-client conference that is protected by the attorney-client privilege.  The individual making the presentation is informing the audience of Somali detainees of what rights they possess insofar as their immigration cases, such as the opportunity to seeking reopening before the immigration court or Board of Immigration Appeals. The statements made by the presenter, and any comments or questions made by the attendees are not protected attorney-client communications.  "In order to show that communications made to an attorney are within the privilege, it must be shown that 'the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance.'"  United States v. Ponder, 475 F.2d 37, 39 (5th Cir. 1973).  Further, "[t]he key question in determining the existence of a privileged communication is 'whether the client reasonably understood the conference to be confidential.'"  United States v. Schaltenbrand, 930

F.2d 1554, 1562 (11th Cir. 1991). In <u>United States v. Noriega</u>, 917 F.2d 1543 (11th Cir. 1990), the Eleventh Circuit outlined the elements necessary to establish the attorney-client privilege:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

<u>Id.</u> at 1550 (citations omitted). A communication is only privileged if it is made "in confidence." "If persons other than the client, [his] attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." <u>In re Teleglobe Communications Corp. v. BCE, Inc.</u>, 493 F.3d 345, 361 (3rd Cir. 2007)

The current group legal presentations are done with groups of five detainees. The presence of four other detainees who are strangers precludes a finding that a communication between the attorney leading the group legal presentation and an individual detainee is intended to be a confidential communication.

Because the group legal presentations are not attorney-client conferences, the obligation to provide plaintiffs with reasonable access to their attorneys does not apply to these presentations. In short, plaintiffs' attorneys have no right to have a meeting room with sufficient space to allow them to make a group legal presentation to multiple detainees. Defendants will continue to accommodate the presentations when the meeting rooms are available.

B.    Numerical Limits on Group Legal Presentations

Plaintiffs also complain about the numerical limits – five detainees -- placed on the group legal presentations conducted at Glades. In <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861 (1979),

4

the Supreme Court recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id. at 546.

Plaintiffs' attorneys were permitted to conduct "Know Your Rights" presentations to the Somali detainees at Glades on December 21, 2017. Acosta Decl., ¶ 9. Due to disturbances, group aggressive behaviors that incited disorder and disobedience, as well as direct assaults on staff members from Somali detainees, occurring since the December 21, 2017 presentation, the management at Glades implemented enhanced precautionary supervision measures. Id., ¶ 10. One of these precautionary measures was to limit the audience at a "Know Your Rights" presentation to five persons. Id.

Additionally, a small group of Somali detainees were placed in Administrative Confinement or Segregation Status, due to a finding that they had violated a facility rule. Id. Detainees in Administrative Confinement are not permitted to participate in group functions or activities, but are permitted to meet with their attorneys individually. Id.

Detainees who are in Administrative Confinement are escorted through the facility in leg restraints and a waist belt with the wrists cuffed to the front. The restraint is done for safe and efficient escort of the detainee through the facility. Detainees who are in Administrative Confinement who want to meet with their attorney are permitted to do so, but those detainees must remain in restraints due to their previous conduct that resulted in them being placed in Administrative Confinement.

In Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987), the Supreme Court observed that "running a prion is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and

executive branches of government.  Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint."  Id. at 84-85.  In Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 97 S.Ct. 2532 (1977), the Supreme Court noted that "[b]ecause the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators."  Id. at 126, 97 S.Ct. at 2538.

Plaintiffs ask this Court to allow 25 persons to attend the group legal presentations (8 if they are in segregation), and object to speaking with a detainee who is in restraints.  D.E. 49 at 2-3.  The administrators at Glades determined that a limit of five detainees is necessary in order to ensure the safety and security of the institution, and placing a particular detainee in Administrative Segregation is necessary to ensure safety of others.   These decisions are made by officials with the responsibility to ensure the safety and security of Glades, including detainees, staff, and visitors.   These decisions should be accorded deference by this Court.

C. Telephone Access

Enforcement Removal Operations records all calls by detainees at its facilities, to ensure safety.  Acosta Decl., ¶ 13.  ICE recognizes the attorney-client privilege, and will not listen to a call where there has been an announcement that this is an attorney-client privileged call.  Id.  ICE recommends that the attorney on the call announce at the inception of the call that it is an "attorney client call."

II. DEFENDANTS HAVE COMPLIED WITH THIS COURT'S ORDER BY PROVIDING ADEQUATE MEDICAL CARE TO DETAINEES AT GLADES

Plaintiffs argue defendants have violated the Court's order by failing to provide medical treatment at Glades.  D.E. 49-1 at 12-14.  In Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985), the Eleventh Circuit held that "in regard to providing pretrial detainees with such basic

6

necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." Id. at 1574. Applying the Eighth Amendment standard to a claim of inadequate medical care, the appellate court observed that, "[t]o recover on his claim of inadequate medical care, Hamm had to prove that jail officials engaged in 'acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs.'" Id. at 1574-75, citing Estelle v. Gamble, 427 U.S. 97, 106 (1976).

In Estelle, the Supreme Court found that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." 97 S.Ct. at 291. In the medical context, the Court found that an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and want infliction of pain" or to be "repugnant to the conscience of mankind."

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Id. (footnote omitted).

In Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994), the Supreme Court defined "deliberate indifference" as requiring that the prison official be subjectively aware of the risk in order to violate the Eighth Amendment:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

7

>> substantial risk of serious harm exists, and he must also draw the inference.

114 S.Ct. at 1979.

Defendants will be filing, under seal, the Declaration of LCDR Naisha Lee, United States Public Health Service, to address plaintiffs' claims of inadequate medical care at Glades. The declaration is being filed under seal because it describes the medical conditions of specific detainees, the diagnoses rendered in those cases, and the medical treatment provided by health care practitioners at Glades.

The plaintiffs detained at Glades have received adequate medical care.

### III.  THE DHS SECRETARY HAS BOARD DISCRETION IN DETERMINING WHERE TO DETAIN ALIENS

The DHS Secretary has broad discretion in determining where to detain aliens who are in DHS custody. Section 1231(g)(1) of Title 8, United States Code provides, in pertinent part, that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." An alien does not have the right to be detained at a location which he deems to be optimal in terms of securing representation and presenting evidence. Calla-Collado v. Attorney General, 663 F.3d 680, 685 (3rd Cir. 2011).

In the exercise of this broad authority, when the 92 Somalis were returned to the United States on December 9, 2017, ICE had to decide where to detain them. Krome is an intake facility for all DHS partners in South Florida. Acosta Decl., ¶ 19. There is limited detention bed space availability at Krome, which has three Immigration Courtrooms, a USCIS Asylum Pre-screening Office, a Medical Housing Unit, as well as a transportation and removal hub. Krome's detainee population is rarely below capacity, and it is currently at capacity. Acosta Decl., ¶ 19.

## CONCLUSION

Plaintiffs' Motion for Contempt or in the alternative to Enforce Court Order should be denied. Defendants have complied with this Court's orders by providing plaintiffs with reasonable access to their attorneys, and with adequate medical treatment for the injuries they have sustained.

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

By: __Dexter A. Lee_____
DEXTER A. LEE
Assistant U.S. Attorney
Fla. Bar No. 0936693
99 N.E. 4th Street, Suite 300
Miami, Florida  33132
(305) 961-9320
Fax:  (305) 530-7139
E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 24, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

__s/ Dexter A. Lee_____
DEXTER A. LEE
Assistant U.S. Attorney

## SERVICE LIST

Farah Ibrahim, et al. v. Juan Acosta, et at.,
Case No. 17-24574-CIV-GAYLES
United States District Court, Southern District of Florida

Rebecca Sharpless
Fla. Bar No. 0131024
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273
Coral Gables, Florida  33146
(305) 284-3576 (direct)
(305) 284-6092 (clinic)
rsharpless@law.miami.edu

ATTORNEY FOR PLAINTIFFS

Dexter A. Lee, AUSA
Office of the U.S. Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida  33132
(305) 961-9320
Fax:  (305) 530-7139
E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR DEFENDANTS